UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ROY REISEN,

               Plaintiff,

       v.

GOODRICH CORPORATION, INC.,

             Defendant.

No. CV-07-0294-FVS

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT,

**THIS MATTER** came before the Court for a hearing on Defendant's May 5, 2008 motion for summary judgment. (Ct. Rec. 21). Plaintiff is represented by Christine M. Weaver, and Defendant is represented by Keller W. Allen.

**BACKGROUND**

This lawsuit arises out of Plaintiff's termination of employment by Defendant, on or about March 22, 2005. Compl. ¶ 3.14. Plaintiff alleges he was wrongfully terminated, in violation of public policy, for making complaints about environmental safety and health violations at Defendant's facility. Compl. ¶¶ 3.4-4.5.

**DISCUSSION**

**I.    Summary Judgment Standard**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273-74 (1986). A material fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist.  *Id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact.  *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  Only when this initial burden has been met does the burden of production shift to the nonmoving party.  *Gill v. LDI*, 19 F. Supp. 2d 1188, 1192 (W.D. Wash. 1998).  Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Here, the facts upon which the Court relies are either undisputed or established by evidence that permits but one conclusion concerning the fact's existence.

## II.  Discussion

Defendant moves for summary judgment on Plaintiff's action in its entirety.  (Ct. Rec. 21).  Specifically, Defendant contends it is not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 2

liable, as a matter of law, for Plaintiff's alleged wrongful termination in violation of public policy. (Ct. Rec. 23 at 2). Plaintiff responds that the case should not be decided on summary judgment because triable issues of fact exist with respect to whether the reasons articulated by Defendant for terminating Plaintiff's employment are a mere pretext for what, in fact, is a discriminatory purpose. (Ct. Rec. 31). The undersigned does not agree.

The general rule in Washington State is that employees may be terminated at will. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 226, 685 P.2d 1081 (1984). However, there is an exception to the at-will doctrine when "the discharge of the employee contravenes a clear mandate of public policy." *Thompson*, 102 Wn.2d at 232. An employee cannot be terminated for reasons that violate public policy. *Gardner v. Loomis Armored Inc.*, 128 Wn.2d 931, 935, 913 P.2d 377 (1996). The *Gardner* case set forth the following four-part test for analyzing wrongful discharge claims involving alleged violations of public policy:

> (1) the employee must prove the existence of a clear public policy (the clarity element); (2) the employee must prove that discouraging his conduct would jeopardize the public policy (the jeopardy element); (3) the employee must prove that the pubic-policy-linked conduct caused his discharge (the causation element); and (4) the employer must not be able to offer an overriding justification for the discharge (the absence of justification element).

*Gardner*, 128 Wn.2d at 941.

As noted by Defendant, the first three elements fall within the employee's burden of proving that the discharge violated public policy. *Thompson*, 102 Wn.2d at 232. The fourth element represents the shifting of the burden to the employer to show an overriding

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 3

justification for the discharge.  *Id*. at 232-233.  Defendant
challenges only two of the four elements of Plaintiff's claim: the
causation and absence of justification elements.  (Ct. Rec. 37 at 3-
11).

**A.   The Causation Element**

Defendant contends that Plaintiff was not discharged for making
complaints about environmental safety and health violations at
Defendant's facility.  Defendant asserts that, instead, Plaintiff was
terminated solely because he repeatedly violated Defendant's safety
rules.  It is Plaintiff's burden to show that the alleged pubic-
policy-linked conduct caused his discharge.  *Gardner*, 128 Wn.2d at
941.

Plaintiff's employment history reflects Plaintiff's performance
was marred by five disciplinary warnings for violations of Defendant's
policies.  On May 8, 2003, Plaintiff received a first level warning
for failing to immediately report an on-the-job injury to his finger;
on September 15, 2003, Plaintiff was verbally counseled for failing to
wear safety shoes; on September 29, 2003, he received a third level
and final warning with a three-day suspension for again not wearing
safety shoes; on February 4, 2005, he was given a final warning and
five-day suspension for failing to wear hearing protection and warned
that any further disregard of safety issues, no matter how slight,
would result in his termination; and, on March 13, 2005, Plaintiff
failed to disclose a list of alleged safety violations at Defendant's
facility, upon specific request by management, which led to his
///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 4

termination.  (Ct. Rec. 23 at 5-6).  Significantly, Plaintiff does not deny that he actually committed the acts that resulted in his safety violation warnings and discipline.

Defendant argues that "the final straw" that caused Plaintiff's termination was when Plaintiff failed to provide Defendant safety violation information he had allegedly observed and reduced to writing.  Defendant's "Employee Guide" provides: "We require you to immediately report observed unsafe conditions or acts."  (Ct. Rec. 24 ¶ 6).  Plaintiff violated this rule when he failed to provide Defendant with the safety violation information he had allegedly observed.

Plaintiff does not dispute that it was his responsibility to report safety issues to management but indicates he satisfied this duty "in speaking directly with his supervisor, Darryl Payton, about the list the day after it was compiled."  (Ct. Rec. 31 at 11).  Nevertheless, Plaintiff did not recreate and disclose the list or otherwise inform management of what he believed to be safety violations.  (Ct. Rec. 37 at 10).  Instead, Plaintiff "threw this list in the garbage and presumed that that was the end of it."  *Id*.  Defendant requested that Plaintiff produce a copy of his list or otherwise divulge the alleged violations, and Plaintiff does not indicate that he provided Defendant with the safety violation information he observed.

Plaintiff alleges that the close temporal proximity between his outspokenness and his subsequent termination supports an inference that the protected conduct was the cause of the termination.  *Hubbard*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 5

*v. Spokane County*, 146 Wn.2d 699, 718, 50 P.3d 602 (2002).  In *Hubbard*, the Court concluded that the close proximity in time between the protected activity and termination (five days) created a material fact as to whether the discharge was because of the plaintiff's protected conduct.  *Hubbard*, 146 Wn.2d at 704-705, 718.  However, here, Plaintiff was discharged seven years following his initial complaints.  Plaintiff's complaints commenced in 1998, he continued to complain throughout his employment, and he was not terminated until 2005.  As noted by Defendant, the majority of Plaintiff's complaints occurred in 1998 and 1999, several years prior to even his first discipline for a safety violation.

Plaintiff has additionally failed to produce adequate evidence of satisfactory work performance.  *See, Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 69, 821 P.2d 18 (1991) (In addition to a showing of temporal proximity, Plaintiff must demonstrate that his work performance and supervisory evaluations were satisfactory).  While Plaintiff presents affidavits from coworkers to support his claim that his work performance was adequate, these individuals had no supervisory authority over Plaintiff's work.  Moreover, contrary to the coworker's assertions, Plaintiff's work history revealed several incidents leading to disciplinary action, including suspensions.  In fact, on March 22, 2005, just prior to his termination, Plaintiff prepared an "Employee-Self Assessment" in connection with his annual performance evaluation and rated his own safety practices as "Developmental."  (Ct. Rec. 23 at 6).  He handwrote on the assessment that he needed to improve his safety rating and adhere to the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 6

company's Environmental Health and Safety Guidelines on a daily basis. *Id.*

The facts demonstrate that Plaintiff was disciplined and subsequently terminated for his repeated failure to comply with Defendant's policies, not for continuously making complaints over the course of his employment. Plaintiff has failed to satisfy the causation element of his wrongful discharge claim involving alleged violations of public policy.

**B.   The Absence of Justification Element**

Even if Plaintiff was able to establish that the alleged pubic-policy-linked conduct caused his discharge, no reasonable juror or fact finder could find that Defendant's justification for the discharge was not overriding.

The last element inquires whether the employer has an overriding reason for terminating the employee despite the employee's public-policy-linked conduct. *Gardner*, 128 Wn.2d at 947. "This fourth element of a public policy tort acknowledges that some public policies, even if clearly mandated, are not strong enough to warrant interfering with employers' personnel management." *Id*. For Plaintiff to be successful on a wrongful discharge claim involving an alleged violation of public policy, the employer must not be able to offer an overriding justification for the discharge. *Gardner*, 128 Wn.2d at 941.

Defendant's termination of Plaintiff was justified. As indicated above, Plaintiff's employment history reflects his performance was marred by disciplinary warnings and suspensions for violations of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 7

Defendant's safety policies.  In fact, the disciplinary record for safety issues that Plaintiff accumulated over the two years prior to his termination in March 2005 exceeded that of any other employee. Plaintiff does not contest that he committed the safety violations which lead to his discipline, and, just prior to his termination, Plaintiff rated his own safety practices as "Developmental," and agreed that he needed improvement.

Defendant asserts its safety program is taken very seriously, and its history of discipline of employees for safety rule violations shows that no safety incident is considered minor.  Defendant indicates that if employees committed safety violations that went unaddressed, the violations occurred without Defendant's knowledge. (Ct. Rec. 37 at 6-7).  Each employee who had committed safety violations and of whom Defendant's management was aware was disciplined consistent with Defendant's discipline policy based on the employee's patterns of behavior and prior performance records.  For example, Ben Albers had only one First Level Warning prior to his termination, and Teresa Holloway was terminated for her first safety violation.[1]  (Ct. Rec. 37 at 7-8).  Plaintiff had a worse safety

---

[1]On May 15, 2008, Plaintiff filed a motion to strike Defendant's supplemental disclosures, which provided the information regarding Ben Albers and Teresa Holloway, on the basis that the filing occurred approximately one week after the discovery deadline.  (Ct. Rec. 27).  Since that time, the schedule has been amended and the parties have had ample time to request additional time for discovery, if necessary.  In fact, Defendant indicated in its May 27, 2008 response that Defendant would be amenable to allowing Plaintiff additional time to conduct further discovery related to its supplemental disclosures.  (Ct. Rec. 44 at 9).  Plaintiff's motion to strike based on Defendant's untimely filing (Ct. Rec. 27) is denied.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 8

record than either of these employees when he was terminated by Defendant in 2005.

On February 4, 2005, Plaintiff was also warned that any further disregard of safety issues, no matter how slight, would result in his termination. *See, Domingo v. Boeing Employees' Credit Union*, 124 Wn.App. 71, 76, 86 n. 38, 98 P.3d 1222 (2004) (finding that there was an overriding justification for termination where the employee violated the employer's policy after being previously warned that such a violation would result in termination). Despite being on notice that he would be terminated for another infraction, no matter how slight, Plaintiff violated policy a few weeks later by failing to disclose the list of alleged safety violations at Defendant's facility.

Defendant had an overriding justification for Plaintiff's discharge; specifically, Plaintiff's repeated violations of employment policy. Based upon the undisputed facts of record, no reasonable jury or fact finder could find that Defendant lacked an overriding justification for Plaintiff's discharge. Defendant's rationale for terminating Plaintiff was not a pretext for intentional retaliation.

**CONCLUSION**

Plaintiff is not able to show that his termination was caused by his complaints about health and safety issues at Defendant's facility. Even if Plaintiff was able to show a nexus between the alleged pubic-policy-linked conduct and his discharge, the facts demonstrate that Defendant was justified in terminating Plaintiff's employment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT - 9

Accordingly, Defendant's motion for summary judgment is granted and Plaintiff's action is dismissed in its entirety.

Based on the foregoing, **IT IS ORDERED as follows**:

1.  Defendant's May 5, 2008 motion for summary judgment **(Ct. Rec. 21)** is **GRANTED**.

2.  Plaintiff's May 15, 2008 motion to strike **(Ct. Rec. 27)** is **DENIED**.

3.  Defendant's May 23, 2008 motion to strike **(Ct. Rec. 41)** and July 7, 2008 motion in limine **(Ct. Rec. 64)** are **DENIED as moot**.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order, provide copies to counsel, **enter judgment in favor of Defendant** and **close the file**.

**DATED** this __21st__ day of November, 2008.

_____<br>
S/Fred Van Sickle<br>
Fred Van Sickle<br>
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT – 10